# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:23-cv-2-KDB
### (5:20-cr-97-KDB-DCK-1)

| | | |
|---|---|---|
| **ALEEF JAMAR NICKS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's pro se Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 [Doc. 1; <u>see</u> <u>also</u> Doc. 5 (Memorandum)]. Also pending are the Petitioner's "Motion to Expand the Scope of 2255 Proceedings Record" [Doc. 9] and "Renewed Motion to Grant Discovery" [Doc. 10].

## I.    BACKGROUND

On July 21, 2020, Petitioner was charged by Indictment in Case No. 3:20-cr-239-FDW with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). [3:20-cr-239, Doc. 3].

On November 16, 2020 Petitioner was charged by Bill of Information in the case underlying the instant matter, Case No. 5:20-cr-97-KDB, with: possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count One); and possession of a firearm by a felon in violation of § 922(g)(1) (Count Two). [5:20-cr-97 ("CR") Doc. 1 at 1]. Petitioner's retained counsel filed a Plea Agreement and Factual Basis in Case No. -97 on the same day that the Information was docketed.  [CR Docs. 2, 3]. Petitioner waived indictment as follows:

I understand that I have been accused of one or more offenses punishable

1

by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

> After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

[CR Doc. 5].

Petitioner pleaded guilty to Counts One and Two in Case No. -97 pursuant to a written Plea Agreement in which he admitted he is, in fact, guilty as charged in those Counts. [CR Doc. 2 at ¶ 1]. The Plea Agreement provides that Petitioner's breach of the agreement would "permit the United States to proceed on any dismissed, pending, superseding or additional charges.…" [Id. at ¶ 3]. The Plea Agreement sets forth Petitioner's minimum and maximum sentencing exposure. [Id. at ¶ 4].

The parties agreed to jointly recommend that: the base offense level is 20 because the amount of cocaine known to or reasonably foreseeable by Petitioner is at least 300 grams but less than 400 grams pursuant to U.S. Sentencing Guidelines § 2D1.1(a)(5); two levels are added for possession of a firearm pursuant to § 2D1.1(b)(1); two levels are added for involving another in the offense pursuant to § 2D1.1(b)(16); three levels are added for an aggravating role pursuant to § 3B1.1(b); two levels are added for obstruction of justice pursuant to § 3C1.1(b); the plea is timely for purposes of acceptance of responsibility, if applicable; the parties will not seek any other enhancements or reductions to the offense level; and "[n]either party will seek a departure or variance from [the applicable guideline] range." [Id. at ¶ 7]. The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines in determining the sentence; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties'

recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed.  [Id. at ¶ 6].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the written Factual Basis filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 10].  The Plea Agreement further provides that the Factual Basis does not necessarily represent all conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing.  [Id. at ¶ 11].

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right: to withdraw the guilty plea once the magistrate judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not to be compelled to incriminate himself. [Id. at ¶¶ 12-14]. The Plea Agreement acknowledges that Petitioner had discussed with defense counsel his post-conviction and appellate rights, whether there are potential issues relevant to an appeal or post-conviction action, and the possible impact of any such issue on the desirability of entering into the Plea Agreement. [Id. at ¶ 15]. Petitioner expressly "waive[d] all rights to contest the conviction and sentence in any appeal or post-conviction action" except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶ 16]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 22].

The written Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> On or about April 30, 2020, in Lincoln County, … ALEEF JAMAR NICKS ("NICKS"), aided and abetted by others, knowingly and intentionally possessed cocaine, a Schedule II controlled substance, with the intent to distribute it.
>
> On or about April 30, 2020, in Lincoln County, … **NICKS knowingly possessed a Ruger model P95 9mm semiautomatic pistol**.
>
> The Ruger model P95 9mm semiautomatic pistol was manufactured outside the State of North Carolina. Therefore, this firearm traveled in or affected interstate or foreign commerce before law enforcement seized it from NICKS on or about April 30, 2020.
>
> **Prior to April 30, 2020, NICKS knew that he had been convicted of one or more offenses punishable by a term of imprisonment in excess of one year, and was therefore prohibited from possessing a firearm at the time of the possession in this matter**.

[CR Doc. 3 at 1-2] (paragraph numbers omitted; emphasis added).

On November 20, 2020, a Rule 11 hearing came before a United States Magistrate Judge. [CR Doc. 30]. Petitioner stated under oath that he understood the charges and the maximum and minimum penalties that could apply to him. [Id. at 1-2]. He further stated that he understood that an Information had been filed; that he "would have the right for [his] case to go before the grand jury first where they would make a determination of probable cause" and that "by proceeding today, [he is] waving [his] right to have the case go to a grand jury." [Id. at 3]. The prosecutor read the charges and penalties into the record. [Id. at 4-5].

Petitioner admitted that he is, in fact, guilty of the counts set forth in the Information. [Id. at 7]. Petitioner agreed that he understood that pleading guilty may cause him to be deprived of certain civil rights, and that he discussed with counsel: how the sentencing guidelines may apply to his case; that the Court would not be able to determine the sentence until a PSR has been

4

prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he has no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 5-7, 10]. Petitioner acknowledged the rights he was waiving by pleading guilty, and stated his understanding that the case would proceed directly to sentencing. [Id. at 7].

Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 10]. Petitioner stated that he read the Factual Basis, understood it, and agreed with it. [Id. at 11]. Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence other than the terms of the Pea Agreement. [Id.]. Petitioner had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services, stating that he has "[d]one a great job." [Id. at 11-12].

On December 18, 2020, the Court granted the Government's Motion to Dismiss Case No. -239 because Petitioner had pleaded guilty in a "related case," *i.e.*, Case No. -97. [3:20-cr-239, Docs. 18, 19].

The Presentence Investigation Report (PSR) includes a Statement of Relevant Conduct that provides:

> On April 30, 2020, a deputy with the Lincoln County Sheriff's Office traffic-stopped a car in Lincoln County, North Carolina, for having its tail lights out. Sheena Newton ("NEWTON") was driving. The defendant, Aleef Jamar Nicks ("NICKS") was in the front passenger seat. At the time, NEWTON was NICKS's girlfriend, and she was pregnant. They were the car's only occupants.

> When the deputy first approached the car, he saw a backpack on the back seat. Unbeknownst to the deputy at this time, the backpack contained: (i) 154.63 grams of cocaine; (ii) four stacks of cash, each separately rubber-banded and containing $1,000; (iii) a box of plastic baggies; (iv) a loaded Ruger model P95 9mm semiautomatic pistol; and (v) male clothing.

As the deputy spoke to NEWTON and NICKS, he smelled marijuana coming from inside the car. The deputy returned to his police cruiser to call for backup. While the deputy was in his police cruiser calling for backup, NICKS removed the cocaine from the backpack and gave it to NEWTON, who stuffed it in her pants.

When another deputy arrived, the two deputies approached the car. At this juncture, the first deputy noticed that the backpack had been unzipped and moved from the back seat to the floorboard behind the driver's (NEWTON's) seat. When the deputies asked about marijuana in the car, NICKS pulled a small baggie of marijuana from his pocket and handed it to the deputies.

The deputies got NICKS and NEWTON out of the car and patted them down. The deputies found the 154.63 grams of cocaine in NEWTON's pants, approximately three grams of cocaine in NICKS's sock, and $600 in NICKS's pants pocket.

The deputies then searched the car and found the backpack, which at this juncture contained the cash, baggies, pistol, and clothing referenced above, but not the cocaine, which NICKS had given to NEWTON. The deputies also seized two cell phones.

Investigators searched the cell phones pursuant to a federal search warrant. Both phones belonged to NICKS. The cell phones contained abundant photographs of cocaine, including cocaine on scales reflecting weights and cocaine next to large amounts of cash.

Additionally, one of the cell phones contained photographs of the Ruger pistol seized from the backpack. The phones also contained abundant text messages over an extended period of time showing NICKS communicating both with drug suppliers and with a large number of drug customers, discussing amounts of drugs and prices.

NICKS served as a manager/supervisor over others in the conspiracy to distribute cocaine, including over NEWTON and others. Based on the evidence of NICKS's pervasive drug trafficking from the phones, described above, the drug trafficking activity involved in this conspiracy was extensive. It involved at least 300 grams of cocaine.

During the traffic stop, NICKS gave the cocaine to NEWTON in order to thwart the law enforcement investigation, and this action in fact significantly hindered the investigation by later making it difficult to resolve this investigation with respect to both NICKS and NEWTON. The investigation involving NEWTON is still not resolved.

On April 30, 2020, NICKS was a convicted felon, and he knew that he was

a convicted felon and could not possess a firearm. NICKS possessed the pistol seized from him in connection with his drug trafficking activities.

[CR Doc. 15 at ¶¶ 10-19] (paragraph numbers omitted).

The PSR calculated the base offense level and enhancements as set forth in the Plea Agreement. [Id. at ¶¶ 26-30]. Three levels were deducted for acceptance of responsibility based on the following a written statement that Petitioner submitted to the probation officer in which he "accept[ed] responsibility for [his] actions in the crime [he is] being charged with…." [Id. at ¶¶ 22, 41-42].

This resulted in a total offense level of 26. [Id. at 43]. Petitioner had nine criminal history points and a criminal history category of IV for prior convictions including: a North Carolina assault with a deadly weapon, Case No. 10CR237129; a § 922(g)(1) violation in this Court, Case No. 3:13-cr-272-FDW; and possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) in this Court, Case No. 3:02-cr-162-GCM. [Id. at 57, 58, 59]; see [3:13-cr-272, Doc. 22]; [3:02-cr-162, Doc. 26]; Fed. R. Ev. 201. The resulting advisory guideline range was 92 to 115 months' imprisonment followed by three years of supervised release. [CR Doc. 15 at ¶¶ 114, 118].

At the sentencing hearing, the Petitioner stated that he had read the PSR, understood it, and had adequate time to discuss it with his lawyer. [CR Doc. 31 at 3]. Counsel stated that there were no outstanding objections to the PSR. [Id.]. Counsel noted that that there were aggravating circumstances that were already accounted for in the guideline calculation, and argued that Petitioner should be sentenced to the low end of the guideline range. [Id. at 4]. Counsel argued that "he's got a tremendous support system and he's taken steps to move his life in the right direction;" he self-surrendered; he worked to set up credit and business plans; and he has the "ability to turn his life around and become productive…." [Id. at 5-6]. Counsel presented several

witnesses to address Petitioner's character. [Id. at 6-12]. Petitioner expressed his remorse, explained that "[t]hese past six and a half months has been a tremendous burden on [his] sanity and [his] character and [his] spirit…," noted the resources in place to help him establish a career upon his release, and he asked for the opportunity to "redeem [himself]…." [Id. at 13-14].

The Government requested a sentence at the top of the advisory guideline range in light of factors including Petitioner's serious criminal history.  [Id. at 14]. The Government noted that Petitioner "could have been charged in this case with a second 924(c)" because a loaded gun was found in his backpack; the 924(c) charge "would have carried a 25-year-minimum mandatory sentence;" and that avoiding that charge was an "enormous benefit" of the plea for Petitioner.  [Id. at 17].

After considering all of the § 3553(a) factors, the Court sentenced Petitioner within the advisory guideline range to 108 months' imprisonment for each Count, concurrent, followed by three years of supervised release. [Id. at 20]; [CR Doc. 21].

Counsel filed an Anders[1] brief on direct appeal, but raised as a potential issue for review whether Petitioner's sentence is procedurally and substantively reasonable. Petitioner filed a *pro se* supplemental brief questioning whether his plea was knowingly and voluntarily made and whether the Court imposed a procedurally reasonable sentence.  The Government declined to file a brief and did not seek to enforce the appeal waiver in Petitioner's Plea Agreement. The Fourth Circuit Court of Appeals affirmed. United States v. Nicks, 2022 WL 3210715 (4th Cir. Aug. 9, 2022).

---

[1] Anders v. California, 386 U.S. 738 (1967).

Petitioner timely filed the instant § 2255 Motion to Vacate on January 6, 2023.[2] [Doc. 1]. He argues that (restated and renumbered): (1) trial counsel was ineffective for (a) failing to provide effective pre-plea assistance, which rendered his guilty plea involuntary, and (b) failing to move for a downward variance sentence; (2) appellate counsel was ineffective for failing to raise claims of ineffective assistance of trial counsel on direct appeal; and (3) Petitioner is actually innocent of Count Two. Petitioner asks the Court to grant him an evidentiary hearing, vacate his convictions and sentences, and allow him to withdraw the guilty plea. [Id. at 23].

Along with the Motion to Vacate, Petitioner filed a Motion seeking discovery pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings, arguing that certain grand jury records from Case No. -239 may assist him in proving his § 2255 claims. [Doc. 3]. The Court denied discovery because Petitioner's Motion was speculative and failed to demonstrate the existence of good cause to support his request, and it ordered the Government to respond to the Motion to Vacate. [Docs. 4, 6]. The Government filed a Response arguing that the Motion to Vacate should be dismissed or denied because Petitioner waived certain pre-plea claims of ineffective assistance of counsel; he has not shown deficient performance or prejudice; and his claim of actual innocence is waived, procedurally barred, and without merit. [Doc. 7]. Petitioner filed a Reply reiterating his arguments and requesting an evidentiary hearing. [Doc. 8]. This matter is ripe for disposition.

Petitioner subsequently filed Motions renewing his request for discovery and seeking to expand the record pursuant to Rules 6 and 7 of the Rules Governing Section 2255 Proceedings, which are presently pending. [Docs. 9-10].

## II.  SECTION 2255 STANDARD OF REVIEW

---

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings). On January 12, 2023, the Court entered an Order granting Petitioner an extension of time to file a supporting Memorandum. [Doc. 4].

9

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III.    DISCUSSION[3]

### 1.  Ineffective Assistance of Trial Counsel

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong

---

[3] The claims have been liberally construed, restated and renumbered. Any subclaim or argument that is not specifically discussed has been considered and rejected.

inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

### a.     Involuntary Plea

Petitioner argues that counsel performed ineffectively and rendered his guilty plea involuntary by: failing to conduct an adequate pretrial investigation; failing to challenge the Bill of Information and misadvising Petitioner to waive indictment; misadvising Petitioner that, if he did not plead guilty, the Government would file a superseding indictment charging him with a § 924(c) violation that carries a 25-year minimum mandatory sentence; misadvising Petitioner to accept the enhancements contained in the Plea Agreement; and failing to advise Petitioner to plead guilty without an agreement to a "single count." [Doc.1 at 4-12; Doc. 5 at 1-17]. He contends that there is a reasonable probability that he would not have pleaded guilty but for counsel's deficient performance. [Doc. 1 at 5, 7, 12; Doc. 5 at 6, 11, 17].

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of

competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007); see Lee v. United States, 582 U.S. 357, 364-65 (2017) (the question is whether the defendant would have gone to trial, not whether the result of trial would have been different than the result of the plea bargain). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356 (2010); see United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

Petitioner's claims are insufficient insofar as they are vague and conclusory. See Rule 2(b)(2), 28 U.S.C. foll. § 2255 (a § 2255 motion "must … state the facts supporting each ground"); United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

His claims were also waived by his knowing and voluntary guilty plea. "[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. The record demonstrates that the Petitioner pleaded guilty knowingly, voluntarily, and with a full understanding of the charges and his plea's

consequences. [See CR Docs. 2, 30]. He thus waived the claims of ineffective assistance of counsel that preceded his plea.

Petitioner's claims are also conclusively refuted by the record. First, Petitioner contends that counsel failed to conduct an adequate pretrial investigation. He claims that counsel, for instance, failed to interview Newton, read the Grand Jury transcripts, or review the discovery. Petitioner's sworn statements during the Rule 11 hearing contradict his present claims that counsel's deficient performance rendered his guilty plea involuntary. He admitted that he understood the charges, is guilty of them, discussed potential defenses with counsel, and was satisfied with counsel's services, stating that he has "[d]one a great job." [Doc. 30 at 11-12]. His present self-serving claims that counsel failed to conduct adequate pretrial investigation, and that he might not have pleaded guilty had counsel performed differently in that regard, are rejected. [See CR Doc. 3 at 1-2]; Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary). Therefore, the Petitioner's claims that counsel was ineffective for failing to conduct an adequate pre-trial investigation are rejected.

Second, Petitioner contends that counsel should have discovered that the Bill of Information was fatally defective, and was ineffective for advising him to waive indictment. Petitioner's contention that counsel had him plead guilty to a fatally defective Information is meritless. A charging document is sufficient if it "first, contains the elements of the offense

13

charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); see United States v. Barringer, 25 F.4th 239, 246-47 (4th Cir. 2022). The Information charged Petitioner with violating 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 922(g)(1), set forth the essential elements of those offenses, and provided a brief factual description that informed him of the charges against which he must defend and that would protect him from double jeopardy. His contention that Count One is defective because it fails to cite 18 U.S.C. § 2 is unavailing. "Aiding or abetting is an alternative theory of conviction available to the government in every case, whether or not it is explicitly alleged in the indictment." United States v. Durouseau, 26 F.4th 674, 680 n. 4 (4th Cir. 2022); see United States v. Day, 700 F.3d 713, 720 (4th Cir. 2012) ("a defendant may be convicted of aiding and abetting under an indictment which charges only the principal offense"). His contentions that Count Two is defective because it omits "unlawfully" and the "jurisdictional element [of] 'having previously traveled in interstate or foreign'" also fail. Section 922(g) makes it unlawful for a felon to "possess in or affecting commerce, any firearm or ammunition…." 18 U.S.C. § 922(g)(1). The Information's charge that Petitioner was a felon who "knowingly possessed a firearm … in and affecting commerce" tracks the statutory language and was sufficient to charge a § 922(g)(1) violation. See United States v. Hill, 386 F.3d 855 (8th Cir. 2004) (indictment charging that the defendant, a felon, possessed a gun "in or affecting commerce" was sufficient to charge a § 922(g) violation). Accordingly, counsel was not ineffective for failing to challenge the Bill of Information.

Nor was counsel ineffective for advising Petitioner to waive indictment. The Information was sufficient as discussed *supra.* Moreover, Petitioner was advised of his rights and the nature of the proposed charges against him and, after receiving this advice, he waived his right to

prosecution by indictment and expressly consented to prosecution by information. [CR Doc. 5; see CR Doc. 30 at 3]. His present self-serving and conclusory claim that counsel was somehow deficient in advising him to waive indictment is contrary to his knowing and voluntary waiver, and it is rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22. Moreover, Petitioner's supposition that the Government would have been unable to obtain an indictment for the § 841 offense charged in Count One is belied by the strong evidence of his guilt and his admissions, under oath, that he is guilty of that offense. See [CR Doc. 3; CR Doc. 15 at ¶¶ 10-19; CR Doc. 30 at 7, 11]. The evidence in the case would have easily supported that charge had he not waived indictment. See [Id.].

Third, Petitioner contends that counsel misadvised him that, if he did not plead guilty, the Government would file a superseding indictment charging him with a § 924(c) offense that would carry a 25-year minimum mandatory sentence. The record reflects that the Government did, indeed, intend to charge Petitioner with a § 924(c) violation if he did not accept the Plea Agreement. [CR Doc. 31 at 17]. The Factual Basis and other evidence support a § 924(c) charge [CR Doc. 15 at ¶¶ 10-19; CR Doc. 3 at 1-2; CR Doc. 15 at ¶¶ 10-19; Doc. 5-1 (Lincoln County Sheriff's Office Case Report)], and Petitioner's prior § 924(c) conviction in Case No. 3:02-cr-162-GCM would have subjected him to a 25-year minimum mandatory sentence. See 18 U.S.C. § 924(c)(1)(C)(ii). Counsel's advice that Petitioner should accept the Plea Agreement to avoid a § 924(c) charge and its sentencing consequences was accurate, reasonable, and did not constitute ineffective assistance.

Fourth, Petitioner contends that counsel misadvised him to accept the sentencing enhancements contained in the Plea Agreement. The Factual Basis and Statement of Relevant Conduct reveal that Petitioner had a manger/supervisor role in a large cocaine distribution

15

conspiracy; more than 155 grams of cocaine, $600, cash, baggies, a pistol, and two cell phones were found during a traffic top; Petitioner gave cocaine to his pregnant girlfriend during a traffic stop to hinder law enforcement's investigation; cell phone records showed that Petitioner communicated with drug suppliers and customers over an extended period of time. These facts easily support the base offense level of 20 and enhancements contained in the Plea Agreement. Counsel cannot be deemed ineffective for advising the Petitioner to accept the enhancements in light of the significant benefit he obtained from the Plea Agreement, and the futility of challenging the base offense level and enhancements based on the evidence that supported them.

Next, Petitioner's contention that counsel should have advised him to plead guilty straight up to a "single count" is vague, speculative, and meritless. Construing the claim liberally, the Petitioner appears to suggest that counsel should have advised Petitioner to plead guilty to the single § 922(g)(1) count charged in Case No. -239, so that he could avoid being charged with the drug offense. This claim fails because, even if counsel had advised Petitioner to plead guilty straight up to the § 922(g) offense in Case No. -239, nothing would have prevented the Government from later charging him with the § 841 offense. See generally Heath v. Alabama, 474 U.S. 82, 87 (1985) ("Successive prosecutions are barred by the Fifth Amendment only if the two offenses for which the defendant is prosecuted are the 'same' for double jeopardy purposes."). Accordingly, counsel was not ineffective for failing to advise Petitioner to plead guilty in Case No. -239, and he was not prejudiced as a result.

Petitioner's claims are vague and conclusory, and he has failed to demonstrate that trial counsel performed deficiently, or that counsel's performance rendered the guilty plea involuntary or otherwise prejudiced him. Accordingly, these claims are dismissed and denied.

### b.    Sentencing

16

Petitioner argues that counsel was ineffective with regards to sentencing for failing to seek a downward variance based on, *inter alia,* harsh pretrial conditions during COVID-19, his post-conviction rehabilitation efforts, and his family circumstances. [Doc. 1 at 13-14; Doc. 5 at 18-23]. Petitioner claims that his sentence would have been at least one month shorter but for counsel's ineffective assistance. [Doc. 1 at 14-15; Doc. 5 at 22-23].

The Plea Agreement that Petitioner knowingly and voluntarily entered into expressly provides that "[n]either party will seek a departure or variance from [the applicable guideline] range." [Doc. 2 at ¶ 7]. Counsel was not constitutionally deficient for declining to breach Petitioner's knowing, voluntary, and highly beneficial Plea Agreement by requesting a downward variance. Nor has Petitioner identified any facts that, if true, would establish prejudice from counsel's conduct. Accordingly, Petitioner's claim that counsel provided ineffective assistance with regards to sentencing is denied.

## 2. Ineffective Assistance of Appellate Counsel

The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Smith v. Murray, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail ... is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). However, appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than

those presented." United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal ... with the strength of the arguments that were raised." United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018). To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285-86 (2000); United States v. Rangel, 781 F.3d 736, 745 (4th Cir. 2015).

Here, Petitioner contends that appellate counsel was ineffective for failing to present on direct appeal the claims of ineffective assistance of trial counsel that he sets forth in the instant Motion to Vacate. [Doc. 1 at 19-20; Doc. 5 at 36-37]. However, "[c]laims of ineffective assistance of counsel are not cognizable on direct appeal unless the record conclusively establishes ineffective assistance." United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Such claims are generally brought in a § 2255 petition. Id. The claims of ineffective assistance of trial counsel that Petitioner has identified are not conclusively established on the record. See Section 1, *supra.* Accordingly, appellate counsel was not ineffective for failing to raise those non-cognizable claims on direct appeal, nor could appellate counsel's failure to raise those claims have resulted in any prejudice because they are meritless. Id. Petitioner's claim that appellate counsel was ineffective for failing to present the instant claims of ineffective assistance of trial counsel on direct appeal is, therefore, denied.

### 3. **Actual Innocence**

Petitioner contends that he is actually innocent of Count Two because he has a Second Amendment right to bear arms for self-defense, and § 922(g) is unconstitutional, pursuant to New York State Rifle & Pistol Ass'n v. Bruen, 142 S.Ct. 2111 (2022). [Doc. 1 at 17-18; Doc. 5 at 24-

35]. The Government argues that this claim was waived by Petitioner's appellate waiver, it is procedurally defaulted from § 2255 review because Petitioner failed to raise it on direct appeal, and it lacks merit. Petitioner argues that his waiver and procedural default are excused by his actual innocence of Count Two, and that his § 922(g)(1) conviction is unconstitutional pursuant to Bruen.

Unambiguous appellate waivers that a defendant enters into knowingly and voluntarily are generally valid and enforceable. See United States v. Moran, __ F.4th __, 2023 WL 4095937 (4th Cir. June 21, 2023). There is a "narrow class of claims" that the Fourth Circuit has allowed a defendant to raise on direct appeal despite a general waiver of appellate rights. Lemaster, 403 F.3d at 220 n.2. Examples include challenges to sentences based on a constitutionally impermissible factor, see United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); sentences imposed beyond the authority of the district court, see United States v. Broughton-Jones, 71 F.3d 1143, 1147-49 (4th Cir. 1995); and cases in which enforcing the waiver would result in a miscarriage of justice, see United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016). Moran, 2023 WL 4095937, at *4 n.3. To establish a miscarriage of justice in enforcing an appellate waiver, a defendant need only make a cognizable claim of actual innocence. United States v. McKinney, 60 F.4th 188, 192 (4th Cir. 2023) (declining to enforce an appeal waiver where petitioner showed that the sole offense underling his § 924(c) conviction was subsequently held to not constitute a predicate "crime of violence").

Further, "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he

complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). Actual prejudice is shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).  Actual innocence means factual innocence; "this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Mikalajunas,186 F.3d at 490.

Petitioner has failed to state a cognizable claim that he is actually innocent of violating § 922(g)(1). In District of Columbia v. Heller, 544 U.S. 570, 592, 635 (2008), the Supreme Court recognized that the Second Amendment codified a pre-existing "right of law-abiding, responsible citizens to use arms in defense of hearth and home." The Supreme Court cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons...." Id. at 626; see United States v. Moore, 666 F.3d 313, 316-17 (4th Cir. 2012) (noting the "unanimous result reached by every court of appeals that § 922(g)(1) is constitutional, both on its face and as applied …, usually based at least in part of the 'presumptively lawful' language of Heller;" collecting cases).  Just as Heller recognized "the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense," Bruen recognized "that ordinary, law-abiding citizens" have a similar right to carry handguns for self-defense outside the home. 142 S. Ct. at 2122. Justices in the majority and the dissent in Bruen recognized that nothing about the opinion disturbed Heller's recognition that prohibitions against felons possessing firearms are lawful. Id. at 2157 (Alito, J. concurring) ("Our holding decides nothing about who may lawfully possess a firearm….") (emphasis added), at 2162 (Kavanaugh, J., joined by Roberts,

C.J., concurring) (quoting <u>Heller</u> for the proposition that felon-in-possession prohibitions are "presumptively lawful"), at 2189 (Breyer, J., joined by Sotomayor, J. and Kagan, J., dissenting) (same).

<u>Bruen</u> does not hold § 922(g)(1) to be unconstitutional, and Supreme Court dicta has repeatedly indicated that such restrictions on the possession of firearms by felons are valid. <u>See</u> <u>Bruen</u>, *supra;* <u>Heller</u>, 544 U.S. at 626; <u>McDonald v. City of Chicago, Ill.</u>, 561 U.S. 742, 764 (2010) (repeating the assurances in <u>Heller</u> that it does not "cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill….'"). The Fourth Circuit "routinely afford[s] substantial, if not controlling deference to dicta from the Supreme Court," "particularly when the supposed dicta is recent and not enfeebled by later statements." <u>Hengle v. Treppa</u>, 19 F.4th 324, 347 (4th Cir. 2021). Moreover, <u>Bruen</u> did not overrule Fourth Circuit case law expressly finding that § 922(g)(1) is valid. <u>See</u> <u>United States v. Moore</u>, 666 F.3d 313 (4th Cir. 2012) (finding that § 922(g)(1) is constitutional because felon in possession laws are a presumptively lawful either because restrictions on firearm possession by felons were historically understood to be valid limitations on the right to bear arms, or for "some other reason"); <u>United States v. Pruess</u>, 703 F.3d 242 (2012) (holding that § 922(g)(1) is constitutional as applied to a defendant who had been previously convicted of a non-violent felony); <u>see</u> <u>United States v. Finney</u>, No. 2:23-cr-13, 2023 WL 2696203, at *3 (E.D. Va. Mar. 29, 2023) (finding that <u>Moore</u> and <u>Pruess</u> remain valid and binding because they did not rely on the step of the test that <u>Bruen</u> abrogated); <u>United States v. Riley</u>, __ F.3d __, 2022 WL 7610264, at *10 (E.D. Va. Oct. 13, 2022) (same). Petitioner has, therefore, failed to demonstrate that <u>Bruen</u> applies to him. <u>See,</u> <u>e.g.</u>, <u>United States v. Daniels</u>, No. 1:03-cr-83, 2022 WL 5027574 (W.D.N.C. Oct. 4, 2022) (denying a request for sentence reduction based on a change in the law because "[n]othing in the

Bruen decision … casts doubt on the longstanding prohibitions on the possession of firearms by felons") (quotation omitted); United States v. Dawson, 3:21-cr-293, 2022 WL 17839807 (W.D.N.C. Dec. 21, 2022) (denying motion to dismiss indictment because defendant admitted he is a convicted felon and, thus, his reliance on Bruen is misplaced); United States v. Finney, No. 2:23-cr-13, 2023 WL 2696203 (E.D. Va. March 29, 2023) (same); see also United States v. Johnson, 2023 WL 3431238 (5th Cir. May 12, 2023) (rejecting argument that Bruen rendered § 922(g)(1) on plain error review because no binding precedent holds that § 922(g)(1) is unconstitutional and it is not clear that Bruen dictates such a result); United States v. Hill, 2023 WL 2810289 (7th Cir. April 6, 2023) (same); United States v. Haas, 2022 WL 15048667 (10th Cir. Oct. 27, 2022) (same regarding § 922(g)(8)); United States v. Thompson, 62 F.4th 37 (1st Cir. March 10, 2023) (same regarding § 2K2.1(b)(4)(B)). Petitioner's reliance on Bruen to demonstrate his actual innocence of the § 922(g)(1) conviction to which he knowingly and voluntarily pleaded guilty is, therefore, misplaced and his challenge to the § 922(g)(1) conviction is subject to dismissal. See Larch v. United States, 1:23-cv-49, 2023 WL 3081292 (W.D.N.C. April 24, 2023) (dismissing § 2255 claim challenging a § 922(g)(1) conviction because Bruen does not change the conclusion that the Second Amendment does not protect a convicted felon's "right" to bear arms), *appeal filed May 5, 2023*.

A more involved analysis of § 922(g)(1) pursuant to the test set forth in Bruen results in the same outcome. The Supreme Court articulated the following standard for considering Second Amendment claims: (1) when the plain text of the Second Amendment covers an individual's conduct, that conduct is presumptively protected; and, if the conduct is presumptively protected, (2) the government must then justify its regulation by demonstrating that it is "consistent with the Nation's historical tradition of firearm regulation…." Bruen, 142 S.Ct. at 2129-30.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend II. The question, then, is whether Petitioner is part of "the people" to whom the Second Amendment applies. The Supreme Court suggests, and several other courts have concluded, that "the people" is limited to individuals within the political community, and excludes felons. See Bruen, 142 S.Ct. at 2134 ("It is undisputed that petitioners … – a two ordinary law-abiding, adult citizens – are part of 'the people' to whom the Second Amendment applies"); see, e.g., United States v. Hughes, 2023 WL 4205226, at *7 (D.S.C. June 27, 2023) (noting that "[t]he consensus indicates that the first prong of Bruen as applied to § 922(g)(1) shows that the statute is constitutional – meaning, felons are excluded from 'the people' under the plain text of the Second Amendment"); United States v. Riley, __ F.Supp.3d __, 2022 WL 7610264, at *10-11 (E.D. Va. Oct. 13, 2022) ("the people" refers to individuals considered to be part of the political community, including those with the power to vote, and excludes those convicted of a crime); United States v. Ingram, 623 F. Supp. 3d 660, 664 (D.S.C. Aug. 25, 2022) ("By distinguishing non-law-abiding citizens from law-abiding ones, the dicta in Heller and McDonald clarifies the bounds of the plain text of the Second Amendment"); see also Hamilton v. Pallozzi, 848 F.3d 614 (4th Cir. 2017) (holding that "conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment," absent narrow exceptions). Accordingly, Petitioner is not part of "the people" protected by the Second Amendment.

Even assuming *arguendo* that Petitioner is protected by the Second Amendment, the Government has justified the regulation in § 922(g)(1) because such is "consistent with this Nation's historical tradition of firearm regulation." Bruen, 142 S.Ct. at 2135. The Supreme Court has long recognized that Second Amendment's protection "is not unlimited." Heller, 554 U.S. at

619 (2008).  The Second Amendment protects the "law-abiding, responsible" person's possession of arms as discussed *supra*. Id. at 635; see McDonald v. City of Chicago, Ill., 561 U.S. 742, 764 (2010) (the Second Amendment protects "a personal right to keep and bear arms *for lawful purposes*, most notably for self-defense within the home") (emphasis added). There is a longstanding history and tradition in the United States of restricting access to firearms by individuals who are deemed to be uncommonly dangerous. See generally Federal Firearms Act of 1938 Pub. L. No. 75-785, §§ 1(6), 2(f), 52 Stat. 1250, 1250-51 (1938) (prohibiting violent felons from possessing firearms); Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 262 (2020) (noting that "Americans continued some English arms traditions, including the tradition of disarming those perceived as dangerous;" although the colonial laws were sometimes discriminatory and overbroad, they were intended to prevent danger); see also Diarmuid F. O'Scannlain, *Glorious Revolution to American Revolution: The English Origin of the Right to Keep and Bear Arms*, 95 NOTRE DAME L. REV. 397, 405 (2019) (noting that the history of laws used to "disarm dangerous and disaffected persons" reaches back to pre-colonial English history). The Supreme Court noted in Heller that:

> From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 626-627.

At the time Petitioner committed the instant § 922(g)(1) offense, he had prior felony convictions for: assault with a deadly weapon in violation of North Carolina law; possession of a firearm by a felon in violation of § 922(g)(1); and possession of a firearm during and in relation to a drug trafficking crime in violation of § 924(c). Petitioner's felony convictions unquestionably place him among the group of uncommonly dangerous individuals whom the United States has historically restricted from possessing firearms. See Bruen, 142 S.Ct. at 2133 (historical tradition requires only that the government identify a well-established and representative historical analogue, not a historical twin); see, e.g., United States v. Jackson, 69 F.4th 495 (8th Cir. 2023) (on direct appeal, denying an as-applied challenge by defendant who had non-violent drug offense convictions); see also United States v. Rahimi, 61 F.4th 443 (5th Cir. 2023) (distinguishing convicted felons or individuals otherwise subject to another longstanding prohibition on the possession of firearms, from the prohibitions on the possession of firearms by a person subject to a domestic violence restraining order which violates the Second Amendment,). Cf. Range v. Att'y Gen. U.S., 69 F.4th 96 (3d Cir. 2023) (in a declaratory action filed by a gun purchaser against the government, concluding that § 922(g)(1) is unconstitutional as applied to purchaser who was previously convicted of making false statements to obtain food stamps, a felony-equivalent under Pennsylvania law). Therefore, applying the Bruen test, Petitioner's § 922(g)(1) conviction is valid because prohibiting a felon such as Petitioner from possessing a firearm is consistent with the nation's historical tradition.

Petitioner has thus failed to present a cognizable claim that he is actually innocent of violating § 922(g)(1), or that any error regarding his guilty plea worked to his actual and substantial disadvantage. Accordingly, Petitioner's actual innocence claim is waived by his knowing and voluntary guilty plea, procedurally defaulted from § 2255 review, and lacks merit.

### 4. **Pending Motions**

Petitioner asks the Court to grant him discovery, and to expand the record of the § 2255 proceedings pursuant to Rules 6 and 7 of the Rules Governing § 2255 Proceedings. [Docs. 9-10].

As to the Renewed Motion to Grant Discovery [Doc. 10], the Court previously denied the Petitioner's request for the discovery of grand jury documents from Case No. -239 as speculative and for failure to demonstrate good cause. [Doc. 4]; see Rule 6, 28 U.S.C. foll. § 2255. The instant Renewed Motion fails for the same reasons.[4] [Id.]; Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments … at any time prior to final judgment when such is warranted"). Petitioner has again failed to establish good cause to support his speculative request for discovery in this § 2255 action and the Renewed Motion is, therefore, denied.

Petitioner also asks the Court to expand the record pursuant to Rule 7, which provides that "the judge may direct the parties to expand the record by submitting additional materials relating to the motion." Rule 7(a), 28 U.S.C. foll. § 2255. Petitioner contends that the Government failed to attach affidavits from his former trial and appellate counsel in support of its Response which may have supported Petitioner's claims that he is being confined illegally and is entitled to § 2255 relief. [Doc. 9]. The Court finds that no expansion of the record is warranted in the instant case because the record presently before the Court conclusively refutes Petitioner's § 2255 claims; no further evidence is required to resolve this matter. Petitioner's conclusory and speculative

---

[4] The Court further notes that, even if the records would show that the grand jury had declined to charge him with the drug possession offense in Case No. -239, such would have no bearing on the validity of that charge in Case No. -97 because nothing prevented Petitioner's subsequent indictment for that offense by a grand jury. See generally United States v. Williams, 504 U.S. 36, 49 (1992) (the Double Jeopardy Clause of the Fifth Amendment does not bar a grand jury from returning an indictment when a prior grand jury has refused to do so).

contention that affidavits from his former trial and appellate counsel may support his claims does not warrant expansion of the record.  His Motion, therefore, is denied.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate is dismissed and denied, and Petitioner's pending Motions are denied.

**IT IS, THEREFORE, ORDERED** that:

1.   Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 [Doc. 1] is **DISMISSED AND DENIED**.

2.   Petitioner's Motion to Expand the Scope of 2255 Proceedings Record [Doc. 9] and Renewed Motion to Grant Discovery [Doc. 10] are **DENIED**.

3.   **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: July 5, 2023

Kenneth D. Bell
United States District Judge

27